Richard COLLINS, John Cox, Paul Bobb and Michael Watson, on behalf of themselves and all others similarly situated, Plaintiffs–Appellees,

v.

Roy ROMER, Governor of Colorado, in his official capacity; Frank Gunter, Executive Director, Colorado Department of Corrections, in his official capacity; L. Dennis Kleinsasser, Ph.D., Director of Clinical Services, Colorado Department of Corrections, in his official capacity, Defendants–Appellants.

No. 90–1326.

United States Court of Appeals, Tenth Circuit.

May 5, 1992.

Carolyn Lievers, Asst. Atty. Gen., General Legal Services Section (Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich,

Sol. Gen., Paul Farley, Deputy Atty. Gen., Maurice G. Knaizer, Deputy Atty. Gen., John Lizza, First Asst. Atty. Gen., Larry A. Williams, First Asst. Atty. Gen., and Stacy Worthington, Asst. Atty. Gen., on the brief), Denver, Colo., for defendants-appellants.

Boyd N. Boland (Robbin A. Lego and Karen E. Robertson with him on the brief), of Holme, Roberts & Owen, Denver, Colo., for plaintiffs-appellees.

LOGAN and BRORBY, Circuit Judges, and DAUGHERTY, District Judge.[*]

DAUGHERTY, District Judge.[*]

The Appellants appeal from an award of attorneys fees to the Appellees under 42 U.S.C. § 1988. The Appellees, inmates in the custody of the Colorado Department of Corrections, were parties in a suit brought under 42 U.S.C. § 1983 challenging a Colorado statute which required Colorado prison inmates to make a $3.00 co-payment for each medical visit. In the suit it was claimed that the co-payment statute violated the rights of prison inmates under the Eighth Amendment to the U.S. Constitution.

In 1989, after the suit was filed but prior to a trial on the merits, the Colorado General Assembly amended the medical co-payment statute to exclude most medical services from the co-payment charge. The Appellees proceeded to trial challenging the amended statute, which was found to be constitutional both on its face and as applied to the named Plaintiffs who were in the lawsuit for the actual trial. The two Plaintiffs who originally brought the lawsuit had been dropped from the lawsuit prior to or during trial, and other inmates had been added.

The Appellees requested attorneys fees for only the period prior to the 1989 amendment of the co-payment statute, on the grounds that the lawsuit was the catalyst causing the statutory change which was required by law and thus rendering them

prevailing parties under the relevant case law. The district court agreed and awarded the Appellees approximately $38,000 in attorneys fees.

As framed by the Appellants, the issues on appeal are: (1) whether Plaintiffs/Appellees were prevailing parties so as to justify an award of attorneys fees under 42 U.S.C. § 1988, and (2) whether the amount of fees awarded was reasonable. To the two prior stated issues, it is necessary to add a third: whether the attorneys fee was properly awarded to those Plaintiffs remaining at the conclusion of the trial, and, if not, whether the fee award can relate back to any of the Plaintiffs who were in the lawsuit at the time of the statutory amendment. Because we concur in the result reached by the court below, the award of attorneys fees is affirmed. We disagree, however, with a portion of the rationale enunciated by the district court in its decision.

The original medical co-payment statute, enacted in 1987, required that all inmates in the custody of the Colorado Department of Corrections be assessed a $3.00 co-payment charge whenever they were seen by a physician, dentist or optometrist. In November, 1987, two inmates, James T. Kosage and Ira D. Lustgarden, brought suit *pro se* against the Colorado General Assembly and the State of Colorado challenging the statute. In January, 1988, the present lawyers for the Plaintiffs entered their appearance and filed a First Amended Complaint asserting claims against the State of Colorado, the Colorado Department of Corrections and three executive officers in their official capacities. The First Amended Complaint was brought as a class action and stated that the co-payment charge contained in the 1987 statute was so large in comparison to inmate income that it constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. That Complaint asserted that the statute forced the Plaintiffs to choose between basic medical care or

---

[*] Honorable Fred Daugherty, Senior United States District Judge for the Western District of Oklahoma, sitting by designation.

basic hygiene necessities, since few inmates could afford both.

In September, 1988, the Plaintiffs requested leave to file a Second Amended Complaint to add additional Plaintiffs and requesting an order certifying the case as a class action. The Plaintiffs also filed a Motion for Summary Judgment at approximately that time. The requested leave to file the Second Amended Complaint was never granted, the Second Amended Complaint was never filed and was declared moot when leave was granted to file a Third Amended Complaint which only attacked the amended statute.

In 1989, while the Motion for Leave to File Second Amended Complaint and the Motions for Class Action and Summary Judgment were pending, the Colorado legislature substantially amended the medical co-payment statute, effective July 1, 1989, to eliminate most of the instances in which inmates are charged a co-payment fee. Under the amended statute, inmates were to be assessed a co-payment charge only when the inmate sees a physician without a referral from a nurse or a physician's assistant.

The Plaintiffs [1] filed a Third Amended Complaint in February, 1990, challenging the constitutionality of the 1989 amendment and adding additional Plaintiffs. The Plaintiffs' challenge to the 1989 amendment was tried to the Court in September, 1990. The trial court had previously denied Plaintiffs' request for class certification and, during the trial, dismissed the claims of Plaintiffs Lustgarden, Lofton and Soper. Plaintiff Kosage had previously been permitted to withdraw from the action in April of that year. The Court held that the claims of the remaining Plaintiffs were unsupported by any evidence and that the 1989 medical co-payment statute was constitutional on its face and as applied to those named Plaintiffs.

In October, 1990, the trial court conducted an evidentiary hearing on the Plaintiffs' Motion for Attorneys Fees, which was filed

prior to trial. On that Motion, the Court ruled that the Plaintiffs were prevailing parties in that their lawsuit caused a change in the 1987 medical co-payment statute and that such change was required by law. The Court found the 1987 statute to be unconstitutional as applied to the named Plaintiffs and Plaintiff Kosage and awarded the Plaintiffs attorneys fees incurred prior to the effective date of the 1989 amendment in the amount of $38,-298.75. The Defendants/Appellants currently appeal only that portion of the case awarding the Plaintiffs attorneys fees.

 The standard of review to be applied in this case is that questions of law are reviewed *de novo,* while questions of fact may be disturbed on appeal only if found to be clearly erroneous. In applying the above principles to an attorneys fee issue under 42 U.S.C. § 1988, this Court has stated that if the issue of whether or not the plaintiff is a prevailing party turns on whether or not his lawsuit is causally linked to the relief obtained, that is, whether or not the suit is a substantial factor or significant catalyst in prompting the change, that is a factual issue to which the clearly erroneous standard of review should be applied. The second prong of the analysis, whether the change that resulted was actually required by law, is a legal issue which this Court should examine *de novo. Supre v. Ricketts,* 792 F.2d 958, 961 (10th Cir.1986).

The attorneys fee statute at issue in this case, 42 U.S.C. § 1988, states in pertinent part as follows:

"In any action or proceeding to enforce a provision of §§ 1981, 1982, 1983 and 1986 of this title ... the Court, in its discretion, may allow the prevailing party other than the United States, a reasonable attorneys fee as part of the costs."

In 1978, the First Circuit held that the legislative history of 42 U.S.C. § 1988 "strongly suggests that a plaintiff who is partially successful in achieving the relief sought may still receive an [attorneys fees]

---

**1.** Hereinafter the term "Plaintiffs," unless otherwise specified, is used to include all Plaintiffs

since the commencement of the lawsuit.

award." *Nadeau v. Helgemoe,* 581 F.2d 275 (1st Cir.1978). That Court concluded that "plaintiffs may be considered 'prevailing parties' for attorneys fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Nadeau,* 581 F.2d at 279. The First Circuit held that, when a judicial determination on the merits has not been made, a plaintiff can be considered a prevailing party if he can establish that his suit was causally related to any action taken by the defendants to improve the plaintiffs' condition and that the defendants' conduct in making such a change was required by law. *Nadeau,* 581 F.2d at 281.

The *Nadeau* test was adopted by this Court in *Foremaster v. City of St. George,* 882 F.2d 1485 (10th Cir.1989), *cert. denied,* 495 U.S. 910, 110 S.Ct. 1937, 109 L.Ed.2d 300 (1990). This Circuit agreed with the First Circuit that in the absence of a judicial determination on the merits, a plaintiff may prevail for attorneys fee purposes if he can meet the catalyst test and show "(1) that [the] lawsuit is causally linked to securing the relief obtained and (2) that the defendant's conduct in response to the lawsuit was required by law." *Foremaster,* 882 F.2d 1485, 1488, citing *J & J Anderson, Inc. v. Town of Erie,* 767 F.2d 1469, 1473 (10th Cir.1985).

■ At the hearing on the Plaintiffs' Motion for Attorneys Fees in this case, the trial court found that the Plaintiffs had met both of the catalyst test elements in achieving the 1989 amendment to the medical co-payment statute. During the Court's oral ruling at the hearing on the Motion for Attorneys Fees, the Court states as follows as to the first prong:

"I find that the preponderance of the evidence in this case, indeed the only evidence in this case, demonstrates by a rather clear preponderance that the lawsuit was causally linked to securing the relief obtained, which is to say the relief obtained was the amending of the statute, effective July 1, 1989. The evidence is abundant. . . ."

The Court referenced the legislative history and numerous letters and memoranda which discussed the Plaintiffs' medical co-payment lawsuit and its possible attendant legal fees as being significant in the minds of the defendants. The trial court specifically held that the Colorado General Assembly members "were right on notice at the very beginning that they had a statute with some severe constitutional problems and that there was a lawsuit, and they were seeking to minimize the fees that would be incurred in that lawsuit." Transcript of Attorneys Fee hearing, at 92. The trial court found that the cumulative effect of all of this evidence concerning the effect of the lawsuit on the legislative change made it clear beyond question that the lawsuit was in fact a substantial factor in promoting the legislative change.

In addition, there appeared to be little question that the 1989 medical co-payment statute amendment did in fact achieve most of the results sought by the Plaintiffs in their lawsuit. While the Plaintiffs were attempting to have all medical services provided to inmates free of charge, the amended statute eliminated the co-payment charge in all but one instance. As a result, the Court found that not only was the Plaintiffs' lawsuit a substantial factor in achieving the change, but that that change achieved most of the Plaintiffs' desired result.

As has been stated, the district court's finding that the Plaintiffs' lawsuit was a substantial factor in achieving the statutory amendment is a factual finding that should not be disturbed on appeal by this Court unless such finding is determined to be clearly erroneous. We find that the district court apparently had ample evidence upon which to base his determination that the Plaintiffs' lawsuit was the substantial catalyst in achieving the 1989 amendment to the medical co-payment statute, and hence that determination should be affirmed. In addition, as will be discussed further in connection with the second prong of the *Foremaster* catalyst test, the complete transcript of the 1990 trial challenging the amended statute is not a part of the record on appeal. Such an

omission requires that any findings of the district court necessarily be affirmed. *Rachbach v. Cogswell*, 547 F.2d 502 (10th Cir.1976).

■ We next turn to the district judge's holding that the 1989 amendment was required by law, which is the second prong of the prevailing party test. Although the original 1987 statute was not at issue during the trial on the 1989 amendments, the district court, at the hearing on attorneys fees, specifically found that the evidence presented in that trial indicated that the 1987 statute was in fact unconstitutional. The Court stated on this issue that:

"I find that on the evidence that was submitted at trial, including the testimony of plaintiffs' expert witnesses, that statute—and including the testimony of the officials of the Department of Corrections—that statute would have been unconstitutional as applied to the named plaintiffs and it would have been unconstitutional as applied to Mr. Kosage. The reason for that is simply because the evidence was very clear that there is an inmate level of pay which is far, far below $3.00, the $3.00 co-payment statute. The evidence was that it would require in some cases days and in some cases weeks of an inmate pay to meet the $3.00 co-payment requirement. The evidence was that it was particularly harsh for chronically ill people or people who had to attend a doctor on more than one occasion for a particular malady. And, I therefore think that ... because [the statute] set that requirement so high, there's no question in my mind that the 1987 statute had the effect of depriving not just the named plaintiffs, but ... [a]nybody who was indigent at the Colorado State Penitentiary and had no outside income ... of meaningful access to medical care." Transcript of Attorneys Fee Hearing, at 89.

The district judge who made the above finding was not the original judge in this proceeding. When the Plaintiffs filed their original Motion for Summary Judgment in October, 1988, the case was referred to a magistrate. In his recommendation, the magistrate found the 1987 medical co-payment statute to be constitutional on its face on the grounds that there is no explicit constitutional prohibition against charging an inmate a fee for medical services if in fact the inmate can afford that fee and he is not thereby denied access to medical services. The magistrate's order, which was later adopted by the original district judge in the case, reserved for trial the question of whether the statute was unconstitutional as applied to the named Plaintiffs. Thus, the magistrate's recommendation and the district court's adoption of that recommendation would not preclude the district court who tried the case from holding that the 1987 statute was unconstitutional as applied, as it did at the hearing on the Motion for Attorneys Fees. The evidence presented at the trial on the 1989 amendment would necessarily be relevant to the question of the constitutionality of the much more stringent 1987 statute. The determination of the constitutionality of the 1987 statute was a necessary and integral part of the later attorneys fee question, and the district judge should be able to use that evidence in his determination of the original statute's constitutionality, and properly did so.

In *J & J Anderson*, this Circuit, in discussing the second prong of the prevailing party test as enunciated in *Nadeau*, relied on the Fifth Circuit case of *Williams v. Leatherbury*, 672 F.2d 549, 551 (5th Cir. 1982), for the following proposition:

"A defendant may unilaterally undertake action that moots the suit. In such a case, a plaintiff may still recover attorneys fees if he can show both a causal connection between the filing of the suit and the defendant's action *and that the defendant's conduct was required by law, i.e., not a wholly gratuitous response to an action that in itself was frivolous or groundless.*" 767 F.2d, at 1475. (emphasis added)

The Fifth Circuit elaborated further on the proper test to determine whether or not a plaintiff has met this second prong in *Hennigan v. Ouachita Parrish School Board*,

749 F.2d 1148 (5th Cir.1985), and stated that:

> "When the plaintiff has shown both that he succeeded on the central issue in the litigation and that the lawsuit caused the defendant to act, he has made a prima facie case that he is the prevailing party and entitled to attorneys fees. There is no reason to require the plaintiff to prove, in addition, that the defendant's conduct fulfilled a legal obligation or otherwise to show the defendant's motivation."

While this Circuit has not adopted as expansive a view of the "required by law" element, *Supre v. Ricketts*, 792 F.2d 958 (10th Cir.1986), the explanation of "required by law" as enunciated in *J & J Anderson* and later cases is clearly the law of this Circuit.

Under the facts of this case, the Plaintiffs have easily met the "required by law" element, in that the Plaintiffs' lawsuit attacking the 1987 statute was not "frivolous or groundless" and thus the response by changing the statute could not be considered "wholly gratuitous." Indeed, the position of the Attorney General of Colorado was that the 1987 statute suffered from constitutional infirmities and that certain changes were required to eliminate those defects. In the case at bar, the trial court not only determined that the Plaintiffs' lawsuit was not frivolous or groundless, but that in fact the 1987 statute was unconstitutional as applied to the Plaintiffs. While the Court's finding of the unconstitutionality of the 1987 statute may not have been strictly necessary in order that attorneys fees might be awarded, in that the determination that the Plaintiffs' case was not frivolous or groundless would not necessarily require an ultimate determination of the constitutionality of the statute, the Court did nonetheless make such a determination and such determination was a proper basis for purposes of the attorneys fee award.

■ In any event, as Appellees point out, this Court is unable to properly review the trial court's holding that the 1987 statute was unconstitutional in that in this appeal this Court has not been provided by Appellants with a copy of the trial transcript of the trial on the Third Amended Complaint. This Court has been provided with and reviewed only the lower court's Findings of Fact and Conclusions of Law at that trial, and so is unable to review the evidence used by the district court in reaching those conclusions *de novo*. This Court has repeatedly refused to review the question of whether a judgment is supported by the record if the record is not properly before the Court. *U.S. v. Hubbard*, 603 F.2d 137 (10th Cir.1979). Thus, the district court's holding that the 1987 statute was unconstitutional and the 1989 amendment was accordingly legally required would have to stand regardless of the standard of review that should normally be applied.

■ The next issue that must be addressed by this Court is the question of whether the attorneys fees awarded were reasonable. As has been stated, the trial court's determination on this issue must stand unless this Court determines it to be clearly erroneous. The total hourly rate claimed by the Plaintiffs/Appellees' attorneys is not contested by the Appellants. Rather, the Appellants complain that the total number of hours is excessive and that there were duplicate hours billed, at least in part because the attorneys used the case as a "training exercise." Appellants' Opening Brief, at 22.

After an evidentiary hearing on the Plaintiffs' attorneys fee motion, in which both the Plaintiffs' lead counsel and an independent expert testified concerning the reasonableness of the fees, the trial court specifically found that the hours billed and the fee charged were reasonable. The Court acknowledged some question about whether the amount spent on the Plaintiffs' first Motion for Summary Judgment was justified, but the Court resolved that question in favor of allowing fees for the Motion, stating that the amount spent on the Motion was not unreasonable in light of the ultimate result attained. The Court concluded by stating that "[t]he Plaintiffs are entitled to an award of attorneys fees. The reasonable amount of that fee ... is

$38,298.75." This Court is unwilling to hold that determination to be clearly erroneous under the facts of this case, and so the trial court's award of the attorneys fees to the Plaintiffs as to the amount of $38,298.75 should be affirmed.

The remaining issue in this case is the most difficult to resolve. The Appellants assert that because the Plaintiffs at the time of the trial on the Third Amended Complaint, Collins, Bobb and Cox, were not added as parties until 1990, after the 1989 amendment to the 1987 medical co-payment statute, their claims and factual allegations could not have played any part in that amendment and those Plaintiffs thus could not be considered prevailing parties for attorneys fee purposes under the *Foremaster* test. The Appellants emphasize the fact that although a Motion for Class Action was filed, the class was never certified and in fact the Motion was ultimately denied by the trial court. The Plaintiffs contend, and it appears to be undisputed, that the Plaintiffs at the time of the 1989 amendment, Kosage and Lustgarden, were Plaintiffs in this litigation and were later dismissed from the case prior to or during the trial on the Third Amended Complaint and the award of attorneys fees.

It is the position of the Appellants in this case that the Court could consider the Plaintiffs to be prevailing parties for attorneys fee purposes only if the medical co-payment statute was found to be unconstitutional "as applied to the persons who were plaintiffs at the time of or prior to the amendment." The Appellants contend that there was no evidence presented on the trial on the Third Amended Complaint relating to original Plaintiffs Kosage and Lustgarden, and the evidence presented at that trial with respect to the present Plaintiffs cannot be used to establish the unconstitutionality of the 1987 statute with regard to those Plaintiffs who had previously been dismissed from the action.

In response, the Appellees contend that the Motion for Attorneys Fees was made on behalf of all Plaintiffs and that the trial court's order granting attorneys fees is also addressed to "Plaintiffs" generally.

The Appellees rely on the statement by the trial court in its oral ruling on the Motion for Attorneys Fees that the fees should be granted to "the group of people challenging this statute," even though a formal class was never certified.

In order to properly consider the Appellants' contentions on this issue, it is helpful to set out a chronology of significant events in the case.

11/12/87 Initial Complaint was filed by Plaintiffs James F. Kosage and Ira D. Lustgarden, *pro se*, on behalf of themselves and all other persons similarly situated.

1/8/88 Attorneys Holme, Roberts & Owen entered their appearance for Plaintiffs.

2/10/88 First Amended Complaint filed.

9/28/88 Motion for Leave to File Second Amended Complaint (never granted) and Motion for Certification of a Class.

7/1/89 Effective date of amendment of 1987 medical co-payment statute by the Colorado General Assembly.

2/28/90 Filing of Third Amended Complaint limited to constitutionality of 1989 amendments to medical co-payment statute.

4/24/90 Plaintiff Kosage was allowed to withdraw from suit.

9/5/90 Motion for Attorneys Fees filed. Pretrial conference held, at which class certification was denied.

9/17/90–9/18/90 Trial of case commences. During trial, Plaintiffs Lustgarden, Lofton and Soper were dismissed from case without prejudice.

10/19/90 Hearing and ruling on Motion for Attorneys Fees.

As will be seen from the above chronology, at the time of the 1989 amendment to the contested 1987 medical co-payment statute, the original Plaintiffs were not only in the case, but were still the only named Plaintiffs. The Motion for Class Action had been filed but had not yet been ruled on, and while a Motion to File a Second Amended Complaint listing additional Plaintiffs had been filed, such Motion

also had not been ruled on at the time of the amendment. In addition, while Plaintiff Kosage was allowed to withdraw as a Plaintiff prior to the trial on the Third Amended Complaint and the filing of the Motion for Attorneys Fees, Plaintiff Lustgarden was still a Plaintiff at the time of the filing of the Motion for Attorneys Fees in September, 1990. At that time, of course, the Third Amended Complaint had been filed listing additional Plaintiffs as well. Original Plaintiff Lustgarden was not ultimately dismissed from the case until the trial was well under way.

As a result, while the Appellants are correct in their statement that none of the Plaintiffs remaining in the case after the conclusion of the trial were in the case at the time of the amendment to the 1987 statute, the Appellants overlook the fact that both original Plaintiffs continued on in the case until just prior to trial, in the case of Plaintiff Kosage, and well into the trial and after the filing of the Motion for Attorneys Fees, in the case of Plaintiff Lustgarden.

■ The attorneys fee statute in question, 42 U.S.C. § 1988, provides that the fees shall be awarded to a party rather than to that party's attorney, even though in many instances the party will be merely a conduit for the benefit of his attorney. *Brown v. General Motors Corp., Chevrolet Div.,* 722 F.2d 1009 (2nd Cir.1983); *Richards v. Reed,* 611 F.2d 545 (5th Cir. 1980). Under this rule, this Court finds that the district court could and should have awarded the fees specifically to Plaintiff Lustgarden, who was one of the original Plaintiffs and a Plaintiff at the time of the filing of the Motion for Attorneys Fees. As the district court has held, there is no question that the benefit sought was achieved in this case and that under the attorneys fee statute, the prevailing parties should be entitled to a reasonable fee. To deny a fee on the grounds claimed by the Appellants, when in fact there was a Plaintiff who survived from the beginning of the case until after the Motion for Attorneys Fees was filed, would be to elevate form

above substance and result in an injustice to those involved in this case.

■ This Court, however, does not approve the reasoning of the district court in awarding the fees to the "Plaintiffs" generally on a class action theory, when the Motion for Class Action was specifically denied by the district court. The district court stated at the hearing on the Motion for Attorneys Fees that the Court granted fees to the Plaintiffs as a group because the Court viewed the case as one ongoing case that had existed since 1987 and did not regard as determinative the fact that some of the original Plaintiffs had dropped out during the course of the litigation. The district judge stated that he denied class action status for reasons which could be termed judicial housekeeping. The district judge stated:

> "That doesn't mean that [the case], in another sense, is not a class action and it always has been a class action in the sense that it is public litigation brought on behalf of certain people who have suffered injury ... The fact is that the Plaintiffs' class and the attorneys representing them were the prevailing party and, when I say 'Plaintiffs' class,' I use that term loosely, not in the Rule 23 sense, but in the sense that the Plaintiffs who were bringing this litigation and challenging this statute, the—if I can use the term, the group of people challenging this statute—prevailed in the sense that they brought about the amendment to the 1989 statute."

This Court agrees with the Appellants that this was not an appropriate basis for an award of attorneys fees. When a class has not been properly certified and in fact the Motion for one has been denied, the parties involved should not be allowed to benefit as if such class had been certified.

The Court considers that the dismissal of Plaintiff Lustgarden during the trial on the Third Amended Complaint in this case did not dismiss Plaintiff Lustgarden as far as the pending Motion for Attorneys Fees was concerned. Plaintiff Lustgarden was an initial Plaintiff when this case was filed, was a Plaintiff when the statute was

amended, and was a Plaintiff when the Motion for Attorneys Fees was filed. Such Motion eventually was limited to legal services rendered prior to the 1989 amendment to the statute under attack.

Hence, Plaintiff Lustgarden was a Plaintiff for all purposes in connection with the Motion for Attorneys Fees and the award made thereon. The award of such fees was not made to Plaintiff Lustgarden individually, but as he was a Plaintiff regarding said Motion, the award of fees made by the Court to the Plaintiffs will be considered and corrected as being made to Plaintiff Lustgarden as the prevailing party to receive the award of attorney fees under the statute.

Based on the foregoing, the attorney fee award made herein is AFFIRMED.